```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
KENNETH EUGENE WILLIAMS,

                    Plaintiff,
                                                MEMORANDUM & ORDER
          -against-                             18-CV-1147 (JS)

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                    Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:      Howard D. Olinsky, Esq.
                    Olinsky Law Group
                    250 South Clinton Street, Suite 210
                    Syracuse, New York 13202

For Defendant:      Arthur Swerdloff, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    271 Cadman Plaza East, 7th Floor
                    Brooklyn, New York 11201
```

SEYBERT, District Judge:

Plaintiff Kenneth Eugene Williams ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the Commissioner of Social Security's (the "Commissioner") denial of his application for Title II disabled adult child ("DAC") insurance benefits and Title XVI supplemental security income ("SSI") benefits. (Compl., D.E. 1, ¶ 1.) Pending before the Court are the parties' cross-motions for judgment on the pleadings. (Pl. Mot., D.E. 10; Comm'r Mot., D.E. 17.) For the following reasons, Plaintiff's motion is

GRANTED IN PART and DENIED IN PART and the Commissioner's motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

On March 23 and March 24, 2016, Plaintiff filed for SSI and DAC benefits, respectively, alleging that since April 14, 1985, psychiatric problems have rendered him disabled. (R. 229-35, 236-42, 280; see R. 130, 131 (showing effective filing dates).) After Plaintiff's claims were denied, (R. 133-41, 142-45), he requested a hearing before an Administrative Law Judge ("ALJ"), (R. 146-48). On July 20, 2017, Plaintiff appeared with his attorney for a hearing, during which a vocational expert ("VE") testified. (R. 60-94.) In decisions dated October 18, 2017, the ALJ denied Plaintiff's claims for benefits: In one decision, the ALJ found that Plaintiff was not disabled by the age of twenty-two and not entitled to DAC insurance benefits, (R. 24-32), and in the other, the ALJ found that Plaintiff was not currently disabled and not entitled to SSI benefits, (R. 43-52 (the "SSI Decision")). On January 3, 2018, the Social Security Administration's Appeals Council denied Plaintiff's request for review and the ALJ's

---

[1] The background is derived from the administrative record filed by the Commissioner on May 22, 2018. (R., D.E. 9.) "R." denotes the administrative record. For purposes of this Memorandum and Order, familiarity with the administrative record is presumed. The Court's discussion is limited to the challenges and responses raised in the parties' briefs.

2

decisions became the final decisions of the Commissioner. (R. 1-6.)

Plaintiff filed this action on February 22, 2018 and moved for judgment on the pleadings on July 23, 2018. (Pl. Br., D.E. 10-1.) The Commissioner opposed Plaintiff's motion and cross-moved for judgment on the pleadings on February 21, 2019. (Comm'r Br., D.E. 18.) Plaintiff opposed the Commissioner's motion and replied in further support of his motion on March 14, 2019, (Pl. Opp., D.E. 20), and the Commissioner filed a reply brief on April 4, 2019, (Comm'r Reply, D.E. 22).

## DISCUSSION

I. The ALJ's Decision

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] is limited to simple tasks and low stress work, defined as occasional decision-making, occasional ability to deal with changes in a work setting, and occasional interaction with the public and coworkers." (R. 47.) The ALJ found that while Plaintiff had no past relevant work experience, (R. 50), Plaintiff could make a successful adjustment to work existing in significant numbers in the national economy, (R. 51). The ALJ determined that as a result, Plaintiff was not disabled. (R. 52.)

II. Analysis

   A. DAC Benefits

   With respect to DAC benefits, there is no evidence that could support a finding of disability beginning before 1985--before Plaintiff attained the age of twenty-two, (R. 130 (Plaintiff's date of birth is December 19, 1963)); 20 C.F.R. § 404.350(a)(5) (describing age requirements for DAC benefits)--and Plaintiff does not argue otherwise in his brief, (Comm'r Br. at 2 n.2; see generally Pl. Br.). Thus, to the extent the parties move for judgment on the pleadings with respect to DAC insurance benefits, the Court DENIES that portion of Plaintiff's motion, GRANTS that portion of the Commissioner's cross-motion, and AFFIRMS the Commissioner's decision to deny Plaintiff's application for DAC insurance benefits. Additionally, as the parties did in their briefs, the Court will refer only to the SSI Decision for the remainder of this Memorandum and Order.

   B. SSI Benefits

   With respect to SSI benefits, Plaintiff argues that (1) the ALJ improperly failed to give controlling weight to the opinion of his treating psychiatrist, Dr. Ashvin Doshi, (Pl. Br. at 13-15); (2) the ALJ's mental RFC determination is not supported by substantial evidence because the ALJ incorrectly weighed opinion evidence, (Pl. Br. at 15-19); and (3) the ALJ's physical RFC determination is not supported by substantial evidence, (Pl.

Br. at 20-25). The Commissioner contends that (1) the ALJ properly did not give Dr. Doshi's opinion controlling weight, (Comm'r Br. at 21-23); (2) the mental RFC is supported by substantial evidence, (Comm'r Br. at 23-25); and (3) the physical RFC is supported by substantial evidence, (Comm'r Br. at 25-29).

1. Testimony and Opinions Regarding Mental Impairments

Plaintiff served thirty-one years in prison after being convicted of murder. (R. 66; R. 367-68.) He was required to see a psychiatrist following his release, but he now sees a psychiatrist voluntarily. (R. 75.) He believes it is necessary to continue treatment because he "hear[s] voices"; they "mostly tell[ ] [him] that people are trying to hurt [him], that people [are] talking about [him]." (R. 75, 80.) While he takes medication to control the voices, it only "quiets them. They're not completely gone." (R. 75.) Plaintiff testified that the voices he hears and the medications he takes make it difficult for him to concentrate. (R. 83.)

Treating physician Dr. Doshi completed an initial psychiatric evaluation of Plaintiff on June 1, 2016. (R. 614-17.) Thereafter, he continued to treat Plaintiff, prescribing medications on approximately a dozen occasions between June 1, 2016 and April 5, 2017. (R. 609-12.) Initially, Dr. Doshi found it difficult to diagnose Plaintiff considering his reports of several mood, perception, and thought disorders, but he gave a

5

provisional diagnosis of "[a]lcohol abuse in sustained full remission in controlled environment and [p]sychotic [disorder] [not otherwise specified]." (R. 616.)

In a mental capacity assessment form dated June 28, 2017, (R. 634-36), Dr. Doshi opined that Plaintiff had a "moderate" limitation in the ability to follow one- or two-step oral instructions to carry out tasks, a "marked" limitation in the ability to sequence multi-step activities, and an "extreme" limitation in the ability to make work-related decisions. (R. 634.) Regarding Plaintiff's concentration, persistence, and pace, Dr. Doshi opined that he was "extreme[ly]" limited in a number of areas, including the ability to sustain an ordinary routine and regular attendance at work and the ability to avoid distractions while working. (R. 635.) Concerning Plaintiff's adaptability, self-management, and ability to interact with others, Dr. Doshi noted several "extreme" and "marked" limitations. (R. 635-36.) In support of his opinion, Dr. Doshi pointed to Plaintiff's "mood [disorder] [not otherwise specified]," "major depressive disorder, recurrent with severe psychotic features," "[p]sychotic [disorder] [not otherwise specified]," and "[a]lcohol use [disorder] in sustained remission in controlled environment." (R. 634-36.) The ALJ gave "[l]ittle weight" to Dr. Doshi's "opinion as it is not supported by records of consistent treatment." (R. 49-50.)

6

According to a "Psychiatric Assessment For Determination Of Employability" dated June 30, 2016, beginning May 24, 2016, therapist Jill Spadafora, MHC-LP, treated Plaintiff four days per week for one and one-half hours per visit. (R. 445-46.) She noted his diagnoses as "[a]lcohol use [disorder] in sustained remission in controlled environment," "psychotic [disorder] [not otherwise specified]," and "mood [disorder] [not otherwise specified]." (R. 445.) She opined that Plaintiff had no limitation in his abilities to understand and remember simple instructions, interact appropriately with others, maintain socially appropriate behavior, and complete low-stress, simple tasks. (R. 446.) However, she remarked that he was "moderately limited"--"unable to function 50% of the time"[2]--in understanding and remembering complex instructions and maintaining attention and concentration. (R. 446.) She opined that he is not capable of working. (R. 446.) The ALJ gave this opinion "[l]ittle weight . . . , as it is unaccompanied by any treatment notes and is inconsistent with the medical evidence of record." (R. 48.)

---

[2] The Commissioner misleadingly implies that Spadafora's assessment of a "moderate" limitation--which her form defines as "unable to function 50% of the time"--was based on the scale appearing on Dr. Doshi's form, which defines a "moderate" limitation based on the subject's "fair" ability to function "independently, appropriately, effectively, and on a sustained basis." (Comm'r Br. at 22 & n.7; compare R. 446 with R. 634.) These are very different definitions.

7

Consultative psychologist Dr. Kathleen Acer, who saw Plaintiff on June 8, 2016, (R. 427-30), noted that he was "cooperative, but depressed and tearful," (R. 428). His posture was "[t]ense," and he was "[r]estless" with "[p]oorly focused" eye contact. (R. 428.) His attention and concentration were "[m]ildly impaired"--he could do simple calculations but could not perform "any serial 3s." (R. 428.) Dr. Acer observed his recent and remote memory skills to be impaired and his cognitive functioning to be slightly below average. (R. 429.) His dress, thought processes, sensorium, orientation, insight, judgment, and general fund of information were normal. (R. 428-29.) Dr. Acer diagnosed "[s]chizoaffective disorder, depressive type," and opined:

> With regard to vocational capacities he can follow and understand very simple directions and instructions. He may be able to perform some simple rote tasks. He would have trouble maintaining attention and concentration, maintaining a regular schedule, learning and performing complex tasks independently, relating adequately with others, and dealing with stress.
>
> The results of the evaluation do appear to be consistent with psychiatric issues which severely hamper functioning.

(R. 429.) The ALJ gave Dr. Acer's opinion "[g]reat weight . . . , as it is based on a complete evaluation and history." (R. 48.)

Consultative psychologist Dr. Paul Herman saw Plaintiff on March 23, 2017. (R. 467-71.) On that day, he both prepared a psychiatric evaluation and completed a "Medical Source Statement

8

of Ability to Do Work-Related Activities (Mental)" (the "Medical Source Form"), (R. 472-74). In his psychiatric evaluation, he noted the following: Plaintiff was cooperative but "somewhat apathetic about the evaluation"; his appearance, speech, thought processes, sensorium, orientation, attention and concentration, and cognitive functioning were normal; his affect was neutral and his mood was "somewhat negative"; and his insight and judgment were "[f]air, but may range to poor." (R. 468-69.) Dr. Herman diagnosed "[s]chizoaffective disorder," "[u]nspecified anxiety disorder," "[a]nti-social personality disorder," and several other disorders, and he opined in a narrative assessment (the "Narrative Assessment"):

> From a psychological/psychiatric perspective, currently there appears to be evidence of moderate to marked limitation with regard to his ability to understand, remember, or apply simple directions; use reason and judgment; interact adequately; sustain concentration, a consistent pace, an ordinary routine, and regular attendance; regulate emotions, control behavior, and maintain well-being; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions.
>
> The results of the evaluation appear to be consistent with psychiatric problems, and these may significantly interfere with [Plaintiff's] consistency of functioning.

(R. 470.) The ALJ gave this opinion "[l]ittle weight . . . , as it is not supported by the medical evidence and this doctor did not review the medical records." (R. 49.)

9

In the Medical Source Form, Dr. Herman opined that Plaintiff was mildly limited in understanding and remembering simple instructions; mildly to moderately limited in carrying out simple instructions and making judgments on simple work-related decisions; moderately to markedly limited in understanding and remembering complex instructions; and markedly to extremely limited in carrying out complex instructions and making judgments on complex work-related decisions. (R. 472.) Additionally, he found that Plaintiff was markedly limited in appropriately interacting with the public, supervisors, and coworkers and similarly limited in responding appropriately to usual work situations and to changes in a routine work setting. (R. 473.) Finally, Dr. Herman checked a box indicating that there were no "other capabilities (such as the ability to concentrate, persist, or maintain pace and the ability to adapt or manage oneself) affected by the impairment." (R. 473.) However, that final assessment contradicts the Narrative Assessment, discussed above, that he completed on the same day. (R. 470.) Given that Dr. Herman authored the Narrative Assessment and could not have included such limitations by mistake, the Court concludes that he either marked the box on the Medical Source Form in error or marked it assuming his Narrative Assessment would suffice to deliver his opinion on concentration, persistence, pace, and other abilities. (R. 470.)

2. <u>Treating Physician Rule</u>

As discussed, the parties dispute whether the ALJ properly applied the treating physician rule. The Court concludes that he did not. To the extent the ALJ did not give controlling weight to Dr. Doshi's opinion because he believed it was "not supported by records of consistent treatment," (R. 49-50)--a point the Commissioner does not argue, (<u>see</u> Comm'r Br. at 21-25)--the ALJ's decision rests upon a flawed factual premise: Records indicate that Dr. Doshi consistently treated Plaintiff between June 2016 and April 2017, prescribing and adjusting his medications. (R. 609-12.) To the extent the Commissioner is correct that the ALJ did not give controlling weight to Dr. Doshi's opinion because the ALJ concluded that there was "a great deal of contradictory evidence," the ALJ's conclusion is incorrect. (<u>See</u> Comm'r Br. 21-23.) All opinions of record reflect Plaintiff's debilitating mental impairments--even Dr. Acer, whose opinion the ALJ gave great weight, noted that Plaintiff's psychiatric issues "severely hamper" his functioning. (R. 429.)

Had the ALJ given controlling weight to Dr. Doshi's opinion, the ALJ doubtlessly would have concluded that Plaintiff was disabled. The result would be no different even if, upon remand, the ALJ were to provide an appropriate reason for not giving Dr. Doshi's opinion controlling weight: All the opinions discussed are unanimous regarding Plaintiff's impaired

11

concentration and inability to keep a schedule. They provide that Plaintiff (1) is "extreme[ly]" limited in his ability to sustain an ordinary routine and regular attendance at work and to avoid distractions while working, (R. 635 (treating physician Dr. Doshi, whose opinion the ALJ gave little weight)); (2) is able to maintain attention and concentration less than fifty percent of the time, (R. 446 (treating therapist Spadafora, whose opinion the ALJ gave little weight)); (3) is "moderate[ly] to marked[ly] limit[ed] with regard to his ability to . . . sustain concentration, a consistent pace, an ordinary routine, and regular attendance," "with psychiatric problems [that] . . . may significantly interfere with [his] consistency of functioning," (R. 470 (consultative examiner Dr. Herman, whose opinion the ALJ gave little weight)); and (4) "would have trouble maintaining attention and concentration [and] maintaining a regular schedule," "with psychiatric issues which severely hamper functioning," (R. 429 (consultative examiner Dr. Acer, whose opinion the ALJ gave great weight)).

Yet the RFC does not account for Plaintiff's inability to focus and keep a schedule. (R. 47.) Significantly, at Plaintiff's hearing, the VE testified that if someone with Plaintiff's RFC were not able to "be on task" for ninety percent of the workday, or if he were to have "more than one unscheduled absence per month," he would be unable to maintain competitive employment. (R. 90-93.) The record unambiguously shows that

12

Plaintiff cannot meet either of those prerequisites to employment. Thus, the Court finds that Plaintiff is disabled and remands this matter solely for the calculation of SSI benefits. See Maldonado v. Apfel, No. 98-CV-9037, 2000 WL 23208, at *2 (S.D.N.Y. Jan. 13, 2000) (quoting Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998)) ("In reviewing the action of the Social Security Administration, a district court may itself determine disability instead of remanding if 'application of the correct legal standard could lead to only one conclusion.'") (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980) ("[W]e have reversed and ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose.")) (additional citation omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion (D.E. 10) is GRANTED IN PART and DENIED IN PART, the Commissioner's motion (D.E. 17) is GRANTED IN PART and DENIED IN PART, the Commissioner's DAC benefits determination is AFFIRMED, the Commissioner's SSI benefits determination is REVERSED, and the case is REMANDED to the Commissioner solely for the calculation and payment of SSI benefits from the date Plaintiff filed for benefits.

The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September  30 , 2019
       Central Islip, New York